# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

    **Plaintiff,**

v.                                                                                  Case No. 6:25-cv-

**APPROXIMATELY $515,706.00 SEIZED**
**FROM JPMORGAN CHASE BANK**
**ACCOUNT #698316158 HELD IN THE NAME**
**OF TOWER HILL LLC**

    **Defendant.**

## <u>VERIFIED COMPLAINT FOR FORFEITURE *IN REM*</u>

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff, the United States, brings this complaint and alleges upon information and belief as follows:

## <u>NATURE OF THE ACTION</u>

1.   This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), (a)(1)(C) and Supplemental Rule G(2), approximately $515,706.00 seized from JPMorgan Chase Bank Account #698316158 held in the name of Tower Hill LLC ("Defendant Funds") on the grounds that the funds are proceeds obtained from wire fraud offenses, in violation of 18 U.S.C. § 1343. In addition, the perpetrators of the fraud attempted to conceal the source, nature, and location of the wire fraud proceeds by moving the proceeds through multiple bank accounts, held in different names, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Thus,

the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent facts or omissions giving rise to the forfeiture occurred in this District.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(i). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6. The Defendant Funds consist of approximately $515,706.00 seized from JPMorgan Chase Bank Account #698316158 held in the name of Tower Hill LLC ("the Subject Account"). On or about April 25, 2025, the Defendant Funds were

seized by the United States Secret Service ("USSS") pursuant to a federal seizure warrant issued by a United States Magistrate Judge after finding probable cause that the Defendant Funds were subject to forfeiture. The Defendant Funds are currently held in the Customs Suspense account.

7. As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

8. The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1343 is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7). "Specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

9. The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1956 is found in 18 U.S.C. § 981(a)(1)(A). Section 981(a)(1)(A) provides for the civil forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property.

10.  As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud offenses and were involved in money laundering transactions.

## FACTS

11.  At all times relevant, Caroline O'Brien-Buster was employed as a Special Agent in Charge with the USSS.

## I. The Fraud

12.  On April 15, 2025, the USSS Orlando Field Office was contacted by "L.M.," the Chief Financial Officer of "M.E.," an Orlando, Florida-based hospitality company, who indicated that her company had been a victim of a business e-mail compromise ("BEC").[1]

13.  L.M. stated to a USSS agent that on January 31, 2025, she had received an email, on an existing email chain, from her Chief Executive Officer, "J.C.," asking that any future payments to him be sent to Wells Fargo Bank account

---

[1] BECs are fraud schemes carried out by compromising legitimate email accounts through social engineering or computer intrusion techniques to conduct unauthorized transfers of funds. A typical business email compromise scam targets commercial, financial, or real estate entities which regularly engage in wire transactions. The victim, which can be an employee or member of the general public, is targeted via email by a compromise actor posing as a representative of the entity, inducing the victim to unwittingly wire funds to a fraudulent account to which the victim believes to be legitimate.

#XXXXXX8001. J.C. also provided the new account information.

14. L.M. then confirmed J.C.'s new account information with the person using J.C.'s email account on the same email chain. Once L.M. received confirmation, L.M. changed J.C.'s banking information on M.E.'s banking platform.

15. Thereafter, on February 13, 2025, M.E.'s Finance Department initiated a $1,014,500.00 bonus payment to J.C. via wire to J.C.'s purported new Wells Fargo Bank account.

16. On February 25, 2025, L.M. received an email from J.C.'s email account asking that she send $900,000.00 to his purported new Wells Fargo Bank account as soon as possible. Since this was an unusual request, L.M. texted and called J.C. to confirm the payment request. J.C. was not available when L.M. called, but L.M. was able to speak with J.C.'s executive assistant, who confirmed that J.C. did not have an account with Wells Fargo Bank.

17. L.M. then contacted M.E.'s Human Resources Department to advise them that she believed that J.C.'s email had been compromised. Shortly thereafter, J.C. contacted L.M. to confirm that J.C. did not have an account at Wells Fargo Bank. Representatives of M.E. immediately contacted Wells Fargo Bank to inform them of the fraud.

18. L.M. advised the USSS that subsequent investigation by M.E.'s IT managed service provider showed that on January 14, 2025, multiple attempts were made to sign into J.C.'s email from various locations outside the United States,

which were blocked due to M.E.'s security protocols. However, there was one successful attempt to gain access to J.C.'s email from a location in Atlanta, Georgia, which was not made by J.C. Once the successful sign on was made, malicious rules were implemented on J.C.'s email to reroute messages received by J.C. to the nefarious actors.

## II.    Tracing of Funds Sought for Forfeiture

19.    As referenced above, on February 13, 2025, Wells Fargo Bank Account #XXXXXX8001 held in the name of FlorerLife LLC ("FlorerLife's Wells Fargo Account"), received a $1,014,500.00 wire transfer intended for J.C. from M.E.'s Bank of America account. Information obtained from Wells Fargo Bank indicates that Julius Cacho[2] is the sole signatory on FlorerLife's Wells Fargo Account.

20.    FlorerLife's Wells Fargo Account was opened on July 23, 2024. According to records maintained by the Georgia Secretary of State, FlorerLife was incorporated as a business in Georgia on July 19, 2024, and was dissolved on March 4, 2025 for failure to file its annual registration, failure to maintain a registered agent or office in the state of GA, and for failure to submit payment for a dishonored fee payment.

21.    Prior to the February 13th $1,014,500.00 wire into FlorerLife's Wells Fargo Account, the account balance was -$19.42. Between February 14, 2025, and

---

[2] Although they share initials, J.C. is not Julius Cacho.

February 24, 2025, 11 Direct Pay debits[3] were sent out from FlorerLife's Wells Fargo Bank Account to 11 different accounts across three different banking institutions, including the Subject Account. There were no other deposits into FlorerLife's Wells Fargo Account during this time.

### A.   Tracing of Fraud Proceeds into the Subject Account

22.   According to account records, the Subject Account was opened on February 11, 2025, with a $200.00 cash deposit. Manish Chaudhari is the sole signatory on the Subject Account. According to the Illinois Secretary of State, Tower Hill LLC was incorporated in Chicago, IL on December 18, 2024, and is a residential remodeling company. USSS agents have been unable to locate on online presence for Tower Hill LLC.

23.   Records from JPMorgan Chase indicate that on February 19, 2025, February 20, 2025, and February 21, 2025, the Subject Account received three Direct Pay debits totaling $657,988.00 from FlorerLife's Wells Fargo Account. Aside from the $200 cash deposit used to open the account, these deposits were the only deposits made into the Subject Account.

24.   On February 25, 2025, JPMorgan Chase Bank was notified by Wells Fargo Bank that the three deposits totaling $657,988.00 were part of a BEC. As a result, JPMorgan Chase Bank froze the remaining funds in the account and closed

---

[3] A direct debit authorizes businesses to withdraw funds automatically from a bank account.

the account. On or about April 25, 2025, the USSS was able to seize the remaining funds in the account (approximately $515,706.00).

## CONCLUSION

25. As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds are proceeds of wire fraud offenses, obtained in violation of 18 U.S.C. § 1343. Additionally, there is probable cause to believe that Defendant Funds are traceable to wire fraud violations, and the targets of the investigation tried to conceal the nature, source, and location of the criminal proceeds by moving the proceeds through various accounts held by different entities. Therefore, the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C).

Dated: May 13, 2025

Respectfully Submitted,

GREGORY W. KEHOE
United States Attorney

By: *(signature)*
NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar No. 0820601
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
E-mail: nicole.andrejko@usdoj.gov

## VERIFICATION

I, Caroline O'Brien-Buster, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of May 2025.

Caroline O'Brien-Buster
Special Agent in Charge
United States Secret Service